MARY McDONALD, Appellant, v. THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent.

*Life insurance — a person, unable to read, is presumed to know the contents of an application which he signs.*

The law presumes that a person, whether able or unable to read, knows the contents of a contract which he executes; and, where the application for a policy of life insurance, signed by the insured, contains untruthful statements, which, by the terms of the policy, operate to render it void, a recovery cannot, in the absence of fraud, be had upon the policy issued thereupon, because proof is given that the insured could not read and could write only his name, and that the questions in the application were put to and answered by the beneficiary when the insured was not present.

APPEAL by the plaintiff, Mary McDonald, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 2d day of November, 1895, upon a dismissal of the complaint directed by the court at the close of the evidence after a trial at the Onondaga Circuit.

*James Devine*, for the appellant.

*William S. Jenney*, for the respondent.

FOLLETT, J.:

This action was begun February 13, 1894, to recover on a policy of life insurance. May 7, 1890, the defendant, in consideration of a

weekly payment of fifteen cents, insured the life of Austin Flanna-
gan, then aged seventeen years at his next birthday, for $306, pay-
able in case of death to his sister, Mary McDonald, the plaintiff
herein. The weekly payments have been made as provided by the
policy. November 14, 1893, the insured died suddenly of hemorr-
hage from his lungs. November 16, 1893, proofs of death in due
form were verified and immediately thereafter were served on the
defendant.

The defendant interposes three defenses to this action: (1) That
the insured falsely stated in his application for the policy that he
was in good health, and that his last illness, when attended by a
physician, was four years before the date of the application, when
he was sick of malaria; (2) that the insured stated that he was insured
by the defendant under policies No. 469,579 and No. 820,030, and
concealed the fact that defendant had issued three policies on his
life and that another company had issued two policies on his life;
(3) that the plaintiff had not an insurable interest in the life of the
insured.

When the policy in suit was issued, and when the insured died,
there were five policies outstanding on the life of Austin Flannagan
— three issued by the defendant, one payable to the plaintiff, one
payable to the mother of Austin Flannagan, and one payable to
Nora McCrary, an aunt of Austin Flannagan; two issued by the
Metropolitan Life Insurance Company, one payable to the mother
of Austin Flannagan and one payable to the plaintiff. These facts
are not disputed. The following are the questions and answers in
the application relating to existing insurance: " 8. Is the person's
life now insured? Yes. If so, state in what companies and what
amounts, and if in this company, give number of policy? Yes.
Hancock, 469,579 — 820,030."

The policy contains the following provision: " If any statement
or answer in said application is in any respect untrue; if any assign-
ment hereof is made; if any policy on the life of said insured previ-
ously issued by this company is now in force without permission to
hold this policy indorsed thereon by the president or secretary
*   *   *   then this policy shall be void."

The application contains the following: " The following state-

ments are made, which, including those made to the medical examiner, shall form a part of the contract for insurance, and if in any respect untrue, the policy issued on this application shall be void."

The existence of the third policy issued by the defendant and of the two policies issued by the Metropolitan Life Insurance Company was not disclosed. The statement in the application in respect to insurance then existing was untrue.

The first clause in the certificate of the medical examiner is as follows: "Questions to be asked only by the medical examiner, and answered by the person examined. * * * 7. When did you last consult a doctor, except for confinement, and what for? If for a cold, state full particulars, and whether predisposed. Four years ago, malaria. 8. Have you ever had any serious illness or injury? No."

In September, 1886, Austin Flannagan, Sr., and five of his family, including the plaintiff and the insured, Austin Flannagan, Jr., had typhoid fever. Three of the family died, and three survived. This was testified to by the attending physician and also by the plaintiff. The plaintiff testified that the disease was malarial fever, but the doctor testified that he might have so termed it at the beginning, but that it developed into typhoid fever, and "I suppose it was generally understood in the family that the boy had typhoid fever." There was no dispute about these facts. The statement in the application in respect to the last serious illness of the insured was untrue.

The plaintiff attempts to avoid the effect of these untruthful statements by showing that the insured could not read, and could only write his name. The application was written by John A. Flannery, an agent for the defendant. At the time of the trial he was so ill that he was unable to testify. The plaintiff called Clinton J. Wheaton, defendant's assistant superintendent at Syracuse, who testified that the application was written by John A. Flannery in his presence, and in the presence of the plaintiff, and that the questions in the application were put to her and she answered them; that the insured was not present. The plaintiff testified that she was present when John A. Flannery wrote the application; that the insured was not; but she does not state whether Wheaton was present. She testified that John A. Flannery wrote the application without asking her a question, and she also testified that the examin-

ing physician and Austin Flannagan were together at her house on the following Sunday, and that she saw her brother sign papers. The certificate of the medical examiner is dated April 6, 1890, which was Sunday, but the application signed by Austin Flannagan is dated April 7, 1890, which was on Monday, and is witnessed by " J. A. Flannery, Solicitor." The presumption is that these papers were executed when dated. There is no evidence in the case tending to show that the application of the insured, executed April 7, 1890, was not read to him. The presumption is that a person, able or unable to read, who executes a contract, knows its contents, and it will not do to hold that, because a person is unable to read a contract, the presumption is that he was unacquainted with its contents. The evidence fails to show that the defendant's agent practiced any fraud in procuring this application. It is evident that the mother, sister and aunt thought that it was desirable to have the life of Austin Flannagan insured, and that the defendant's agent was anxious to issue as many policies on the life as he could.

No question of fact was presented by the evidence, and the complaint was properly dismissed.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.